IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GISELLE NEVAREZ, MCKENNA DORN, KALINA SCHMIDT, and HANNAH DURKIN, on behalf of themselves and all others similarly situated, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> HIGH HEELS DANCING CO., d/b/a HIGH HEELS GENTLEMEN'S CLUB, f/k/a HIGH HEELS SALOON & GENTLEMEN'S CLUB, and KONSTANTIN MATHIOUDAKIS, individually, <br><br> Defendants. | No. 1:24-cv-2447 <br><br> Hon. Judge Manish S. Shah <br><br> Hon. Mag. Judge Jeffrey T. Gilbert <br><br> Jury Trial Demanded |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Giselle Nevarez, McKenna Dorn, Kalina Schmidt, and Hannah Durkin, on behalf of themselves and all others similarly situated, known and unknown, complain against Defendants[1] High Heels Dancing Co., d/b/a High Heels Gentlemen's Club, f/k/a High Heels Saloon & Gentlemen's Club, and Konstantinos Mathioudakis, individually, for: (1) failure to pay the minimum wage and engaging in unlawful tip pooling, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") on a class and collective basis; (2) for failure to pay overtime wages, in violation of the FLSA on a

---

[1] This Amended Complaint is identical in all ways to the Complaint filed earlier on March 26, 2024, with the exception that it includes a correction as to the proper parties. The Complaint was, in relevant part, brought against Konstantin Mathioudakis, but the correct Defendant is Konstantinos Mathioudakis.

1

collective basis; and (3) unlawful tip theft and pay deductions, in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA") on a class basis, and state:

**I.       Introduction**

1.     Plaintiffs, Giselle Nevarez, McKenna Dorn, Kalina Schmidt, and Hannah Durkin bring this action on behalf of themselves and all others similarly situated, known and unknown, to wit, other exotic dancers who currently work for, or have previously worked for Defendants High Heels Dancing Co., d/b/a High Heels Gentlemen's Club, f/k/a High Heels Saloon & Gentlemen's Club, an adult entertainment club located at 2678 N. 48th Road, Somonauk, Illinois, 60552 ("High Heels"), and its manager, Konstantinos Mathioudakis, individually.

2.     As set forth in greater detail below, for years, High Heels has misclassified its exotic dancers as independent contractors, rather than employees, under both federal and state law. Dancers receive no hourly wage and are paid only by receiving tips from customers, which they are required to repay by way of illegal pay deductions, and to share with other individuals who are not eligible to share in the tip pool.

3.     Plaintiffs bring this action on their own behalf, and on behalf of other similarly situated High Heels exotic dancers who may choose to opt-in to this case, for not paying minimum wage or overtime wages as required by federal law pursuant to the FLSA, and for taking a portion of the dancers' tips by requiring dancers to share their tips with individuals not eligible to share in a tip pool. The applicable Collective Action consent forms are attached jointly as Exhibit A.

4.     Plaintiffs bring this action on their own behalf, and on behalf of other similarly situated High Heels exotic dancers, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for violating various provisions of Illinois state wage laws including: (1) the IMWL by failing to pay dancers the required state minimum wage; and (2) the IWPCA by taking deductions from dancers' pay and requiring dancers to share their tip earnings with other individuals.

## II. PARTIES

5. Plaintiff Giselle Nevarez ("Nevarez") is an adult resident of Joliet, Illinois. She worked for High Heels as an exotic dancer from approximately January 18, 2023, until January 16, 2024.

6. Plaintiff McKenna Dorn ("Dorn") is an adult resident of Aurora, Illinois. She worked for High Heels as an exotic dancer from approximately February or March 2023, until October 18, 2023.

7. Plaintiff Kalina Schmidt ("Schmidt") is an adult resident of Plano, Illinois. She worked for High Heels as an exotic dancer from approximately late April or early May 2023, until October 2023.

8. Plaintiff Hannah Durkin ("Durkin") is an adult resident of Rochelle, Illinois. She worked for High Heels as an exotic dancer from approximately January 2020 until March 2020, and again from approximately March 2022 until approximately February 2023.

9. Defendant High Heels Dancing Co., d/b/a High Heels Gentlemen's Club, f/k/a High Heels Saloon & Gentlemen's Club is a domestic corporation, with its principal place of business at 2678 N. 48th Road, Somonauk, Illinois, 60552.

10. Individual Defendant Konstantinos "Dino" Mathioudakis ("Mathioudakis"), is an adult resident of Lemont, Illinois, and the manager of Defendant High Heels.

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), because this action is based, in part, on the FLSA.

12. In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' supplemental state law claims, which are brought pursuant to the laws of the State of Illinois, as those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

3

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendants are located within this judicial district and division, and the unlawful labor practices giving rise to Plaintiffs' claims were committed within this judicial district.

## IV. STATEMENT OF FACTS

<u>Plaintiffs' Employment and Defendants' Business.</u>

14. Defendant High Heels is an adult entertainment bar, which advertises that it provides, "the very best in adult entertainment, including the most talented, full nude dancers and a full bar."

15. Mathioudakis, the club's manager, directed and controlled the payment policies of the club and the rules with respect to the dancers. Mathioudakis was personally involved in all the violations outlined in this Complaint.

16. The Plaintiffs are all former employees of Defendants who worked as exotic dancers.

17. As exotic dancers, the Plaintiffs, and those they seek to represent, would dance fully nude for Defendants in various capacities, including on-stage for single songs or sets of songs, on the floor providing dances directly to customers, and by providing private dances in private rooms.[2]

18. The Plaintiffs, and the class of individuals they seek to represent, all worked in this capacity for Defendants, working day and/or night shifts, during the relevant time period. Night shifts typically ran from 8:00 p.m. until 2:00 a.m. on weekdays, and until 3:00 a.m. on weekends. Day shifts typically started at 4:00 p.m.

19. Exotic dancers, including the plaintiffs, were all paid exclusively through the tips received from dances, including payments taken for dances provided, which were paid at fixed rates set by Defendants, who also controlled what portions they deducted.

---

[2] The Plaintiffs, and the Class they seek to represent, are referred to interchangeably as "dancers" or "exotic dancers."

4

20. As outlined in greater detail below, none of the Plaintiffs or putative class members were paid the legal minimum wage for any hours worked at any point during their employment.

21. Dancers also have no ability to negotiate their own rates of pay, and High Heels dictates the rates that dancers can charge for private dances and table dances, and deducted set percentages from payments received for such work.

22. Dancers, including the Plaintiffs, are required to pay daily or nightly fees to Defendants called "house fees," which are flat-rate payments charged for the right to dance at the club during a given shift. These fees fluctuate between $45 for weekdays or weeknights and $200 for weekend shifts, depending on whether dancers work single or double shifts. In order to perform their job, the dancers must pay these "house fees" to High Heels for every day they work a shift.

23. Defendants required dancers to pay this house fee regardless of whether any patrons visited the bar, and dancers earned any tip wages that night. As a result, on certain weeknights, dancers pay Defendants up to $45 to work several hours for free.

24. The dancers have also been required to share their tips with managers, bouncers, security, and with non-service employees or agents of High Heels.

25. Certain of the Plaintiffs, including Plaintiffs Dorn, Schmidt, and Durkin, regularly worked double shifts more than 4-5 days per week, meaning that they often worked in excess of forty hours per week, and were not paid overtime wages, or time-and-one-half the legal minimum wage, for their hours worked over forty.

26. At all times relevant to this Complaint, Defendants have treated Plaintiffs and their other dancers in a substantially similar manner with respect to their policies and practices.

27. As outlined in greater detail below, High Heels has misclassified its exotic dancers as independent contractors, when in fact, they are employees pursuant to the FLSA, IMWL, and IWPCA.

5

<u>Defendants controlled how dancers held themselves out to the public and lacked opportunity for profit or loss based on managerial skill.</u>

28. High Heels is in the business of providing adult entertainment to its patrons. Thus, the dancers perform services in the usual course of Defendants' business, and without the dancers, High Heels would have no business, such that the dancers' work is integral to Defendants' business.

29. At all relevant times, High Heels dancers have not held themselves out to be in business for themselves. Instead, the dancers are economically dependent on their relationship with Defendants for a substantial portion of their earnings.

30. At times, Defendants imposed rules barring most dancers from also working at other clubs, terminating their employment if they worked shifts elsewhere, ensuring that they could only dance for Defendants.

31. High Heels controlled dancers' marketing materials, and dictated what photographs and social media advertising was done on behalf of High Heels.

32. Defendants fined dancers for making "unauthorized" social media posts that involved High Heels.

33. High Heels also expressly prohibited dancers from communicating or performing private work with customers outside off premises.

34. The dancers have no control over the volume of customers, advertising, or atmosphere at the club, which is controlled entirely by Defendants.

35. Dancers do not purchase equipment and dance only on Defendants' property for Defendants' customers.

36. Other than asking for additional shifts, exotic dancers lack opportunities for profit or loss depending on managerial skill.

<u>Defendants Control all Aspects of Employment, including Scheduling, and Subject Dancers to Illegal Pay Deductions for Alleged Policy Violations.</u>

37. Defendants retain the power to hire and fire the exotic dancers and have disciplined or threatened to discipline dancers who do not comply with Defendants' requirements regarding the manner and means of their work.

38. High Heels sets dancers' schedules. Dancers are required to work a minimum of three shifts per week, and are fined fluctuating amounts for being late, having to miss shifts, or calling in sick.

39. In order to be assigned at least one weekend shift, Defendants require dancers to work at least one or two weeknight shifts per week.

40. Defendants also dictate that certain dancers are "daytime" dancers and barred these dancers from working night shifts.

41. When dancers are scheduled to work holidays, Defendants fine dancers who call off or seek to switch shifts.

42. Defendants fine dancers for tardiness, sometimes at rates of $10 per hour, or at flat rates of $100.

43. Dancers are required to find substitutes for shifts and, at times, to pay the house fee for their substitutes, or they can be barred from returning to work until they agreed to pay whatever fine Defendants instituted. When a dancer is sick or has a conflict and must miss a shift, Mathioudakis will require them to "walk in" with up to $200 before they can come back to work another shift. This means they need to come to work with $200 in cash to pay him directly before he will permit them to work another shift.

44. On certain occasions, for various alleged offenses, Mathioudakis fines dancers as much as $300 - $500 before he will permit them to work another shift.

7

<u>Defendants Control all aspects of how and where Exotic Dancers Performed their Craft, and Where in the Club Exotic Dancers were Permitted to go.</u>

45. High Heels also exercises extensive control over the manner in which its exotic dancers perform their jobs and conduct themselves while on the club's premises, including where to be on the premises and when, what they are allowed to wear, how much they can receive for private dances and sessions, and how they can interact with customers.

46. Upon arrival, dancers are required to go straight to the dressing room, then out to the stage or floor, then, at the end of their shifts, back to the dressing rooms, and home. They were prohibited from going to other locations on the property, like the kitchen.

47. Defendants have even gone so far in their control over dancers' schedules and manner of work as to institute a set of dressing room rules, which includes controlling when dancers are even allowed to be in the dressing room. In relevant part, the "DRESSING ROOM RULES" posted in the dressing room reads, "[DANCERS] CANNOT SIT OR HANG OUT IN THE DRESSING ROOM UNLESS APPROVED BY MANAGEMENT".

48. This extensive control also includes a set of rules for dancing on the stage, and for interacting with customers on the floor.

49. Specifically, a document posted dressing room, labeled "STAGE RULES," sets forth a series of rules dictating nearly every aspect of dancers' conduct while dancing on stage, including as to their dress, appearance, and performance. These include:

   a. "NO VAPING OR DRINKING ON STAGE."

   b. "DO NOT BRING YOUR DRINKS ON STAGE."

   c. "YOU MUST ALWAYS WEAR YOUR HEELS ON STAGE."

   d. "CANNOT GO OVER THE TIPPING RAIL."

   e. "NO BODY LOTIONS OR OILS ARE ALLOWED."

8

  f. "DO NOT BE LATE TO STAGE, IF YOUR NAME IS CALLED YOU CANNOT GO FOR A DANCE."

  g. "MUST USE THE STAIRS TO GET ON AND OFF THE STAGE."

  h. "NO SITTING OR HAVING A CONVERSATION WHILE BEING ON STAGE."

50. These were not the only rules to which High Heels subjected dancers. Others, including the rules for interacting with customers on the floor, were labeled the "FLOOR RULES," were posted in the dressing room, and included:

  a. "YOU CAN'T APPROACH A CUSTOMER IF THERE IS ALREADY A DANCER SITTING WITH HIM. REGARDLESS IF HE'S YOUR REGULAR OR NOT YOU CANNOT DO THAT."

  b. "NO FLOOR OR TABLE DANCES."

  c. "CANNOT SIT ON A CUSTOMER[']S LAP."

  d. "NO CELL PHONES ON THE FLOOR."

  e. "MUST WEAR YOUR SHOES ON THE FLOOR."

  f. "YOU CANNOT BE ON A CUSTOMER[']S CELL PHONE."

51. Defendants also control how dancers conduct private dances by way of the rules labeled, "PRIVATE DANCES," which are posted in the dressing room. These rules included:

  a. "YOU MUST ALWAYS COLLECT YOUR MONEY UP FRONT BEFORE YOU START A PRIVATE DANCE."

  b. "REGARDLESS IF YOUR HEELS ARE OFF YOU CANNOT PUT YOUR FEET ON THE BOOTH WHILE GIVING A DANCE."

  c. "YOU CANNOT SIT IN THE BOOTH UNTIL THE DANCE STARTS. WHEN DONE DANCING YOU MUST TAKE A STEP BACK FROM THE CUSTOMER."

  d. "ALWAYS CONFIRM YOUR DANCE COUNT EVERYTIME YOU'RE DONE DOING A PRIVATE DANCE."

  e. "YOU CANNOT SIT ON A CUSTOMER[']S LAP WHILE DOING A NUDE DANCE."

  f. "IF YOU'RE DOING A TOPLESS DANCE YOU CANNOT FLASH OR MOVE YOUR THONG TO THE SIDE AND CHARGE FOR A NUDE DANCE."

  g. "IF YOU'RE DOING A NUDE DANCE YOUR THONG MUST BE OFF."

52. Defendants have also periodically instituted other unwritten rules, the violation of which can lead to fining or firing dancers. These included, by way of example only, "By the second song, your tops have to be off," meaning dancers have to be topless by the time that the second song was played after they entered the floor area. Dancers are expected to be "bottoms off" or completely nude by the third song or second stage.

53. Other unwritten rules, which dictated dancers' working conditions, that were randomly be instituted by Defendants, and would lead to dancers being fined, included:

  a. Fining dancers $100 or more for kicking their legs over certain railings when dancing on stage;

  b. Fining dancers $100 or more if they were late to a shift;

  c. Fining dancers $100 for having cell phones or other personal items on the floor;

  d. Fining dancers $100 for chewing gum while working; and

  e. Requiring dancers to come in at off hours to have their photographs taken for the website or social media.

54. Dancers have observed that Defendants, namely Mathioudakis, become more aggressive in creating and enforcing arbitrary rules and fines during periods when business is slower for the club, resulting in Defendants coming up with increasing ways to make money by fining dancers.

55. Upon information and belief, the amounts of these fines, or deductions from pay, were not documented in writing, and no records of said deductions were kept.

<u>Defendants failed to pay the Plaintiffs or the class they seek to represent the minimum wage or earned overtime pay.</u>

56. At all relevant times, the federal minimum wage has been $7.25 per hour.

57. At all relevant times, the federal overtime pay rate has been $10.88 per hour.

58. At all times while Plaintiffs worked for Defendants, the minimum wage rates in Illinois were $10.00 per hour in 2020, $11.00 per hour in 2021, $12.00 per hour in 2022, $13.00 per hour in 2023, and $14.00 per hour in 2024.

59. At all times while Plaintiffs worked for Defendants, the state overtime pay rates in Illinois were $15.00 per hour in 2020, $16.50 per hour in 2021, $18.00 per hour in 2022, $19.50 per hour in 2023, and $21.00 per hour in 2024.

60. At no point have Defendants paid the exotic dancers who work at High Heels, including the Plaintiffs, the prevailing minimum wage under state or federal law.

61. At no point have Defendants paid the exotic dancers who have worked at High Heels more than forty hours per week the prevailing overtime pay rate under state or federal law.

62. Dorn worked in excess of forty hours per week for Defendants from approximately February or March 2023 until approximately October 2023, without receiving either the minimum wage or overtime pay.

63. Schmidt worked in excess of forty hours per week for Defendants from approximately May 2023 until approximately July 2023, without receiving either the minimum wage or overtime pay.

11

64. Durkin worked in excess of forty hours per week for Defendants from approximately March 2022 until April or May 2022, without receiving either the minimum wage or overtime pay.

65. The exotic dancers who work at High Heels receive compensation only in the form of gratuities from patrons.

66. During Plaintiffs' employment with Defendants, Plaintiffs never observed any signage posted anywhere on the premises advising employees of their right to minimum wage, overtime, or as to any tip pools, as required by the FLSA and Illinois Department of Labor. See 29 CFR § 516.4.

67. Upon information and belief, Defendants failed altogether to post any posters or signage required by state or federal law as to dancers' rights under the FLSA or IMWL.

68. The failure to provide required notice of governing legal requirements is a sufficient basis for equitable tolling of the statute of limitations. *See Yu G Ke v. Saigon Grill*, 595 F.Supp.2d 240 (2008) (citing *See, e.g., Valdez v. United States*, 518 F.3d 173, 182–83 (2d Cir. 2008)).

69. Plaintiffs seek to recover for all unpaid minimum wage and overtime pay owed during their employment, as well as all unlawfully deducted pay, and all tips unlawfully retained through illegal tip pools.

<u>Defendants subject dancers to unlawful tip pooling.</u>

70. Defendants also require dancers, including the Plaintiffs, to participate in unlawful tip pools.

71. At the end of each shift, Defendants, namely Mathioudakis, require dancers to "tip out" other employees not customarily paid in tips, including primarily security personnel.

72. On average, Defendants required dancers to pay $40-$45 per shift to tip out security.

73. Upon information and belief, Defendants do not track or adequately record the amounts of tips deducted from dancers, which they require to be given to other employees.

12

74. Upon information and belief, dancers are required to pay at least some of these tips to members of management, namely Mathioudakis.

## V. CLASS AND COLLECTIVE ALLEGATIONS

75. Plaintiffs bring this action individually and as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals who worked as an exotic dancer at High Heels at any time between three years prior to the filing of this lawsuit and the entry of judgment in this case, who may choose to "opt-in" to join this lawsuit.

76. Plaintiffs also brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of all individuals who currently work or previously worked as exotic dancers at High Heels at any time between ten years prior to the filing of this lawsuit and the entry of judgment in this case (with respect to the claims brought under the IWPCA) and between three years prior to filing this lawsuit and the entry of judgment in this case (with respect to the claims brought under the IMWL).

77. This action on behalf of the Rule 23 class satisfies the requirements of Fed. R. Civ. P. 23(a), as alleged in the following particulars:

   a. The proposed class is so numerous that joinder of all individual members in this action is impracticable;

   b. There are questions of law and/or fact common to the members of the proposed class regarding; (1) High Heels' conduct in classifying exotic dancers as independent contractors; (2) failing to ensure they are paid at least minimum wage for their work; (3) failing to pay dancers overtime wages when they worked in excess of forty hours in a given workweek; (4) effectively making illegal deductions from their wages by keeping a percentage of the dancers' tips that are paid by customers, uniformly

13

      requiring dancers to pay a portion of their tips to the Defendants and to managers and other non-service employees, and fining dancers for various alleged rules violations;

   c.   The claims of Plaintiffs Nevarez, Dorn, Schmidt, and Durkin are typical of the claims of the proposed class, and they have the same interests as the other members of the class; and

   d.   Plaintiffs Nevarez, Dorn, Schmidt, and Durkin will fairly and adequately protect the interests of the class as they have retained able counsel experienced in class action litigation, and their interests are coincident with, and not antagonistic to, the interests of the other class members.

78.   In addition, this action satisfies the requirements of Fed. R. Civ. P. 23(b), because the questions of law and/or fact common to the members of the proposed class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all class members is impractical. The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. There will be no difficulty in the management of this action as a class action.

79.   Plaintiffs' Counsel is competent and experienced in litigating large wage and hour class and collective actions.

**COUNT I**
**Failure to Pay Minimum Wage in Violation of the FLSA**

80.   Paragraphs 1 – 79 are incorporated by reference.

81.   Defendant High Heels is an "employer" for purposes of the Fair Labor Standards Act, 29 U.S.C. §203(s), because it has annual gross sales or business of at least $500,000 and has employees

engaged in interstate commerce as it is an enterprise whose employees engage in commerce, including entertainment as well as the sale of food and non-alcoholic beverages.

82. The individual Defendant Mathioudakis is also an "employer" under 29 U.S.C. § 203(d) because he has acted directly or indirectly in the interests of Defendant High Heels in relation to its employees, including Plaintiffs and other exotic dancers who have worked at the High Heels in Somonauk, Illinois.

83. Plaintiffs and the members of the proposed class are employees of Defendants for purposes of the Fair Labor Standards Act during all times relevant to this Complaint. Defendants have failed to pay Plaintiffs and the members of the proposed class an hourly rate of at least the federal minimum wage of $7.25 per hour as required by the FLSA, 29 U.S.C. § 206(a)(1)(C).

84. Further, Defendants are not permitted to take the tip credit against the minimum wage (and thus pay the reduced hourly rate for tipped employees of $2.13 per hour) because they did not provide the required notice to the dancers in order to take the tip credit and because the dancers have not been allowed to retain all tips they have received, but instead have been required to share their tips with management and with other employees or agents of Defendants who are not among employees who customarily and regularly receive tips, and not pursuant to a valid tip pooling or sharing arrangement under applicable law. See 29 C.F.R. § 531.52; 29 C.F.R. § 531.54.

85. Plaintiffs and the members of the proposed class are entitled to back wages at the minimum wage rate of $7.25 per hour for every hour worked, pursuant to the FLSA, 29 U.S.C. § 216(b). The failure of Defendants to compensate Plaintiffs and the members of the class at least minimum wage was knowing, willful, intentional, and done in bad faith. Defendants knew or should have known that Plaintiffs and the other dancers, performing the same job functions, were being improperly misclassified as independent contractors given the wealth of case law that has concluded similarly situated exotic dancers are employees of the clubs for which they work.

86. Plaintiffs and the members of the proposed class are also entitled to liquidated damages equal to the amount of unpaid minimum wages due to them under the FLSA, pursuant to the FLSA, 29 U.S.C. § 216(b).

## COUNT II
### Failure to Pay Overtime in Violation of the FLSA

87. Paragraphs 1 – 79 are incorporated by reference.

88. Defendant High Heels is an "employer" for purposes of the Fair Labor Standards Act, 29 U.S.C. §203(s), because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce as it is an enterprise whose employees engage in commerce, including entertainment as well as the sale of food and non-alcoholic beverages.

89. The individual Defendant Mathioudakis is also an "employer" under 29 U.S.C. § 203(d) because he has acted directly or indirectly in the interests of Defendant High Heels in relation to its employees, including Plaintiffs and other exotic dancers who have worked at the High Heels in Somonauk, Illinois.

90. The FLSA requires that employers pay all non-exempt employees one-and-a-half times their regular hourly rate of pay for each hour worked in excess of 40 in a given workweek. 29 U.S.C. § 207.

91. Plaintiffs and the members of the proposed class are employees of Defendants for purposes of the Fair Labor Standards Act during all times relevant to this Complaint. Defendants have failed to pay Plaintiffs and the members of the proposed class an hourly rate of at least the federal overtime pay rate of $10.88 per hour as required by the FLSA, 29 U.S.C. § 206(a)(1)(C).

92. Plaintiffs and the members of the proposed class are entitled to back wages at the federal overtime pay rate of $10.88 per hour for every hour worked over forty, pursuant to the FLSA, 29 U.S.C. § 216(b). The failure of Defendants to compensate Plaintiffs and the members of the class

16

at one-and-one-half times the minimum wage was knowing, willful, intentional, and done in bad faith. Defendants knew or should have known that Plaintiffs and the other dancers, performing the same job functions, were being improperly misclassified as independent contractors given the wealth of case law that has concluded similarly situated exotic dancers are employees of the clubs for which they work.

93. Plaintiffs and the members of the proposed class are also entitled to liquidated damages equal to the amount of unpaid wages due to them under the FLSA, pursuant to the FLSA, 29 U.S.C. § 216(b).

## COUNT III
### Failure to Pay Minimum Wage in Violation of the IMWL

94. Paragraphs 1 – 79 are incorporated by reference.

95. At all times relevant herein, Plaintiffs and the members of the proposed class were employed by Defendants as "employees" within the meaning of the IMWL, 820 Ill. Comp. Stat. 105/3(d).

96. At all relevant times, Defendants were "employers" as defined in the IMWL, 820 Ill. Comp. Stat. 105/3(c).

97. Plaintiffs and the members of the proposed class were not paid proper minimum wages under the IMWL, 820 Ill. Comp. Stat. 105/1, *et seq.*, during their employment with Defendants.

98. Pursuant to 820 Ill. Comp. Stat. 105/4, Plaintiffs and the other members of the proposed class were entitled to be compensated at the applicable State minimum wage rate for all hours worked.

99. Defendants' willful conduct in failing to ensure that its exotic dancers receive the Illinois state minimum wage constitutes a violation of 820 ILCS § 105/1, *et seq*. This claim is brought

on behalf of all dancers who have worked at the Gold Room in the last three years prior to the date of filing of this Complaint until the date of judgment in this action. See 820 §ILCS 105/12.

## COUNT IV
### Illegal Deductions and Tip Theft in Violation of the IWPCA

100. Paragraphs 1 – 79 are incorporated by reference.

101. At all relevant times, Plaintiffs and the members of the proposed class were "employees" of Defendants as defined by the IWPCA.

102. At all relevant times, Defendants were employers of Plaintiffs and the members of the proposed class as defined by the IWPCA.

103. Decision makers who knowingly permit the violation of the IWPCA face individual liability for such violations. 820 ILCS 115/13.

104. Mathioudakis, as a manager, was personally involved in the unlawful pay deductions outlined in this Complaint, and often personally demanded the fines or fees charged to the Plaintiffs and other exotic dancers.

105. Defendants have violated the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.*, by misclassifying their exotic dancers as independent contractors, requiring them to pay fees in order to perform their jobs, keeping a portion of their tips, requiring them to make payments to other individuals (such as security, and others), and by making unlawful pay deductions in the form of fines. This claim is brought on behalf of all dancers who have worked at High Heels in the last ten years prior to the date of filing of this Complaint until the date of judgment in this action. See 735 ILCS § 5/13–206.

WHEREFORE, Plaintiffs requests that the Court enter the following relief:

a. An order authorizing the sending of appropriate notice to current and former employees of Defendant High Heels who are potential members of the collective

18

action under the Fair Labor Standards Act, giving them the opportunity to opt-in to this action;

b. A declaratory judgment that Defendants have willfully and in bad faith violated the minimum wage provisions of the FLSA, and have deprived Plaintiffs and the members of the class of their rights to such compensation;

c. A declaratory judgment that the plaintiffs and class members are employees, not independent contractors under both the FLSA and Illinois state law;

d. Certification of a class pursuant to Fed. R. Civ. P. 23;

e. An order requiring Defendants to provide a complete and accurate accounting of all the wages to which Plaintiffs and members of the class are entitled;

f. An award of monetary damages to Plaintiffs and members of the class in the form of back pay for unpaid minimum wages, together with liquidated damages in an equal amount under the FLSA;

g. An award of monetary damages to Plaintiffs and members of the class in the form of back pay for unpaid minimum wages, together with treble damages, and statutory damages pursuant to the formula set forth in the IMWL;

h. An award of damages for all wages and statutory damages pursuant to the formula set forth in the IWPCA;

i. An award of prejudgment interest on the unpaid wages in accordance with 815 Ill. Comp. Stat. 205/2;

j. Attorneys' fees and costs; and

k. Such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all claims.

                                                                           Respectfully submitted,

                                                                           s/ *Max P. Barack*

The Garfinkel Group, LLC                               One of Plaintiffs' Attorneys
701 N. Milwaukee Avenue, The CIVITAS
Chicago, Illinois 60642
Max Barack (IARDC No. 6312302)
max@garfinkelgroup.com
Haskell Garfinkel (IARDC No. 6274971)
haskell@garfinkelgroup.com