IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GISELLE NEVAREZ, et al., ) | |
| ) | No. 1:24-cv-2447 |
| Plaintiffs, ) | |
| ) | Hon. Judge Manish S. Shah |
| v. ) | |
| ) | Hon. Mag. Judge Jeffrey T. Gilbert |
| HIGH HEELS DANCING CO., et al., ) | |
| ) | Jury Trial Demanded |
| Defendants. ) | |

**MOTION TO ENFORCE THIS COURT'S ORDER, TO COMPEL DISCOVERY, FOR DISCOVERY SANCTIONS, TO STAY THE NOTICE AND OPT-IN PERIOD, AND TO EQUITABLY TOLL THE STATUTE OF LIMITATIONS**

**Dated**: September 19, 2024

/s/     *Max Barack*
One of the Plaintiffs' Attorneys

The Garfinkel Group, LLC
(Lead Attorney) Max Barack
max@garfinkelgroup.com
701 N. Milwaukee Avenue, The CIVITAS
Chicago, IL 60642
(312) 736-7991

# TABLE OF EXHIBITS

**Exhibit 1** – Defendants August 29, 2024 Production;

**Exhibit 2** – Screenshots of Defendants' Website, Nevarez000033-Nevarez000038;

**Exhibit 3** – Screenshots of Defendants' Instagram Account, Nevarez000044-Nevarez000050;

**Exhibit 4** – Declaration of T.G.P. and accompanying exhibits;

**Exhibit 5** – Declaration of M.K. and accompanying exhibits;

**Exhibit 6** – Declaration of V.B. and accompanying exhibits;

**Exhibit 7** – Screenshots of Defendants' Facebook Page, "Dino Heels," Nevarez000039-Nevarez000042;

**Exhibit 8** – Declaration of K.A. and accompanying exhibits;

**Exhibit 9** – Screenshots of Defendants' Previously Public Facebook Account, Nevarez000051-Nevarez000059;

**Exhibit 10** – Declaration of K.S. and accompanying exhibits;

**Exhibit 11** – Declaration of H.D.. and accompanying exhibits;

**Exhibit 12** – Plaintiffs August 6, 2024, Rule 37.2 Correspondence;

**Exhibit 13** – Plaintiffs August 12 and 14, 2024, Rule 37.2 Email Correspondence;

**Exhibit 14** – Plaintiffs' First Set of Supplemental Requests for Production of Documents to Both Defendants;

**Exhibit 15** – Both Parties' August 19-20, and 23, Rule 37.2 Email Correspondence;

**Exhibit 16** – The Email Containing Defendants' August 29, 2024 Production;

**Exhibit 17** – Plaintiffs' First Set of Requests for Interrogatories to Both Defendants;

**Exhibit 18** – Plaintiffs' First Set of Requests for Production of Documents to Both Defendants;

**Exhibit 19** – Declaration of Plaintiffs' Counsel;

**Exhibit 20** – Sampling of Defendants' July 2024 document production;

**Exhibit 21** – Declaration of F.P. and accompanying exhibits; and

**Exhibit 22** – Declaration of B.B. and accompanying exhibits.

Defendants violated this Court's August 8, 2024, Order ("The Order") by failing to produce a list of current and former employees, along with their contact information by August 29, 2024. Plaintiffs now ask this Court to: (a) compel compliance with the Order and discovery; (b) to stay the collective notice period; (c) to toll the statute of limitations; (d) for sanctions under FRCP 37(e); and (e) for the costs and fees associated with brining this Motion to compel Defendant's compliance.

### I. Background

Plaintiffs Giselle Nevarez, McKenna Dorn, Kalina Schmidt, and Hannah Durkin, along with the Collective, allege that Defendants High Heels Dancing Co., doing business as High Heels Gentlemen's Club, and Konstantinos Mathioudakis (collectively "Defendants"), engaged in a systematic practice of misclassifying dancers as independent contractors to avoid compliance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and certain state laws. Dkt. #22, p. 1; Dkt. #4, pp. 1-2.

On June 11, 2024, Plaintiffs moved for conditional certification of a collective action representing all individuals who worked as exotic dancers for Defendants within the past three years Dkt. #22, p. 2. Defendants failed to respond. On August 8, this Court granted Plaintiffs' motion (Dkt. #28) and ordered Defendants to produce a list of all dancers, including their email addresses, phone numbers, last known addresses, and social media handles, by August 29, 2024, *Id.*

Defendants now claim that save for approximately 20 names, that they do not possess the names or contact information of their current or former members of the collective. In support, Defendant's allege that a leak in August 2023 destroyed all the physical records of their members of the collective. In addition, they claim that they have destroyed all electronic communications, whether via text message, email, Facebook or Instagram and the attendant contact information, made to them by members of the collective.

1

Based on statements from numerous collective members and Defendants' prior document production, the total number of individuals employed by Defendants within the statute of limitations exceeds 250. Despite several good faith attempts by Plaintiffs to resolve this issue in compliance with FRCP 37.2, Defendants have only produced the names of 20 former employees—providing contact information for just twelve, eight of whom are already named Plaintiffs in this action. Ex. 1. Defendants have also failed to produce the names and contact information of their current employees and collective members, showing a flagrant disregard for this Court's order. This violation is a transparent attempt to prevent Plaintiffs from notifying members of the FLSA collective, thereby avoiding certification of the collective under 29 U.S.C. § 216(b).

**II.     Defendants' Systemic Attempts to Deny Knowledge of their Employees' Identities**

At every step in this litigation, Defendants have attempted to deny their knowledge of the identities and contact information of the members of the collective who worked for them. As demonstrated below, on numerous occasions, Plaintiffs have had to resort to debunking Defendants' representations and demonstrating to Defendants precisely how they collected and possessed the relevant information. Each time, Defendants have subsequently offered a new excuse as to why they cannot (or will not) comply.

On May 20, 2024, Plaintiff commenced the filing of additional opt-in forms seriatim that contained the legal names of the opt-in members.  On May 24, 2024, in advance Defendants' mandated disclosures under FRCP 26(a) that were due on June 6, 2024, Defendants wrote to Plaintiffs to request the opt-in participants' alias stage names, rather than cross reference the names of the opt-in Plaintiffs with the multitude of electronic or paper sources in Defendant's possession. Notably, at that time, Defendants made no mention of a leak or their destruction of evidence.

On June 3, Plaintiff propounded their first set of interrogatories and requests for production. Exs. 17-18. Relevant to the instant motion, Interrogatory and Request No. #5 requested:

INTERROGATORY NO. 5: Identify all exotic dancers who have worked at the Club since March 26, 2014. For each individual, identify their name, last known address and telephone number, dates of employment, job title, job duties, rate of pay, shifts worked, hours worked each shift, wages paid, and whether are a current or former employee.

DOCUMENT REQUEST NO. 5: Identify and produce all documents, records, and/or ESI related to your Answer to Interrogatory No. 5. To the extent those records no longer exist or do not exist, please state why.

The following week, on or around June 9, 2024, Plaintiffs' Counsel learned that Defendants were proffering class action waiver forms and/or independent contractor agreements to collective members who were still employed by Defendants and pressuring them to sign them while at the workplace. Next, on June 11, Plaintiffs moved for conditional certification. Dkt. # 22.

On July 29, 2024, Defendants failed to provide responsive answers to Plaintiffs interrogatory #5 which requested the names and contact information of the members of the collective. Instead, they chose to solely provide a list if alias stage names. Ex. 20. On August 6, Plaintiffs sent correspondence pursuant to FRCP 37(a)(1) and Local Rule 37.2, setting forth the deficiencies in Defendants' discovery responses and requesting a meet-and-confer call. Ex. 12.

On August 8, the parties conducted a meet-and-confer call addressing, in part, Defendants' deficient discovery production. During that call, Defendants, for the first time, represented that a leak in August of 2023 had allegedly destroyed all or most of the responsive paper documentation containing the names and contact information of their members of the collective. Defendants made this contention, even though they had provided more than 800 other pages of other mostly non-responsive paper records in July 2024.

Later that day, the Court granted Plaintiffs' Motion for Conditional Certification and ordered:

Plaintiffs' motion for conditional certification and issuance of notice [22] is granted. Defendants have not objected, waiving any opposition to the motion. . . . Defendants shall provide a list of individuals who worked as exotic dancers for High Heels Dancing Co., d/b/a High Heels Gentlemen's Club, f/k/a High Heels Saloon & Gentlemen's Club, and Konstantinos Mathioudakis, at any time from 3/25/2021 to the present. Defendants shall include any known contact information, including

3

address, email address, mobile phone number, and social media handles for the potential opt−ins. Defendants shall produce the information by 8/29/24. Plaintiff may send notice by mail, email, text message, and social media.

Dkt. # 28.

Following this Court's August 8, 2024, Order, on August 12 Plaintiffs' counsel sent another FRCP 37(a)(1) communication, summarizing the substance of the parties' August 8, meet-and-confer call as it pertained to the names and contact information of the members of the collective. Specifically, based on information provided by other plaintiffs and members of the collective, Plaintiffs' counsel explicitly demonstrated the myriad alternative sources in Defendants' possession where the names and identities of the members of the collective may be obtained. Quoting in relevant part:

> Since your clients deny having ready access to a list of current and/or former dancers, we have had to revisit your clients' recordkeeping with our clients.
>
> []
>
> [D]espite Defendants' previous assertions, this information exists in various forms. Your clients informed dancers that they made photocopies of their drivers' licenses when they were hired. We have requested that information via [the enclosed] supplemental requests, but your clients will be required to produce it sooner as a result of Judge Shah's ruling. Additionally, Mr. Mathioudakis regularly communicated with dancers via text messages, and his phone likely contains this information.
>
> We also understand that the lead bouncer, Brian (last name unknown), maintained a notebook containing various details about dancers' earnings and work performed night-to-night. We have sought its production through these requests. Finally, the club's social media posts, which are relevant to the economic realities test, as well as photos of dancers posted night-to-night, will assist in reconstructing the list of dancers for class notice purposes. These documents are also sought by way of these requests.
>
> Please let me know by the end of this week, after communicating with your clients, how Defendants intend to proceed with cooperating with Judge Shah's order regarding the provision of the class list for notifying class members of their rights to participate as we will otherwise need to engage in the appropriate motion practice to toll the statute of limitations while we compel production of the requisite documents from your clients.

Ex. 13. Further, in that email, Plaintiffs also issued supplemental requests for production, including requests to produce devices containing relevant ESI of the names and contact information of the members of the collective and any evidence that would corroborate the alleged leak. Exs. 13-14.

Next, on August 14, after learning of even more information that rebutted Defendants' assertions that they did not possess the names and contact information of the members of the collective, Plaintiffs sent another FRCP 37(a)(1) and Local Rule 37.2 communication, conveying:

> ….Specifically, your clients have claimed that they have no records of when any Plaintiffs or other collective/class members began working for Defendants. However, we learned today that many dancers were not only asked to provide their driver's licenses for copying by High Heels but were also required to fill out forms providing their full names, preferred start dates, and stage or dancer names. These documents were subsumed within Plaintiffs' prior requests and should have been produced.
>
> To date, Defendants have withheld any responsive documents, aside from handwritten sheets listing dances performed per night, while maintaining that they cannot provide information on when any dancers started or stopped working for them. We request that you produce this information immediately, as it is relevant, discoverable, and was due when Defendants' responses were initially required. Additionally, this information is crucial for providing notice to class members following Judge Shah's ruling, which requires the production of supporting documents by August 29.
>
> Furthermore, your clients' claim that they have no knowledge of the dancers' identities beyond their stage names is contradicted by their own website. Enclosed with this email are documents Bates Nos. Nevarez000033-Nevarez000038, which are screenshots taken today from your clients' website. These documents confirm that they have invited email communications with potential dancers, further undermining their assertion that they lack contact information for these individuals. Again, any of the emails with this email account would have been covered by prior correspondence.
>
> In summary, your clients' discovery responses are clearly false. They have actively withheld discoverable and relevant documents and information while misrepresenting that they lack such records. Since we last spoke, the Court has granted Plaintiffs' Motion for Conditional Certification. In the Court's Order, Defendants were instructed to produce mailing addresses, email addresses, and social media handles for all potential collective/class members by August 29.
>
> In summary, your clients' discovery responses are clearly false. They have actively withheld discoverable and relevant documents and information while misrepresenting that they lack such records. Since we last spoke, the Court has granted Plaintiffs' Motion for Conditional Certification. In the Court's Order, Defendants were instructed to produce mailing addresses, email addresses, and social media handles for all potential collective/class members by August 29. Please be advised that if

5

> Defendants fail to comply with this Order, in light of today's discoveries, we will pursue all available and appropriate measures under the rules of civil procedure and discovery.

Ex. 13.

As discussed in the email above, Defendants' own website instructs prospective employees to submit applications via email to hhdinc50@gmail.com. Ex. 2. Specifically, the "Work Opportunities" page reads:

> For more information, fill out the form below, or call us at 1 (815) 498-4494. All auditions are held after 3 PM, Tuesday through Saturday. If you would like to send a resume, please email it to hhdinc50@gmail.com (Please attach a photo if applying for a dancer).

This demonstrates that employment applications were submitted via email along with the applicants' resumes, and that anyone who was hired was required to provide identification, including their legal names. Further, Plaintiffs' counsel informed Defendants of the existence of paper employment applications containing the names and contact information completed by opt-in plaintiffs and provided screenshots of Defendants' website Ex. 2.

> Defendants responded on August 19, 2024, again, invoking the alleged leak:

> Many of the documents which they did have regarding the dancers were destroyed in an accident involving a leak resulting from a broken pipe in the premises where the documents were being kept in August, 2023, That is why we have not been able to produce them. . . .

Ex. 15. On August 20, 2024, Plaintiffs responded and reiterated their requests for the electronic versions of the contact information and substantiation of the alleged "leak," stating, in relevant part:

> Thank you for your email. Our supplemental discovery requests contemplate this alleged flood and seek documents verifying its occurrence and the details attendant to the same. Any alleged flood would have no bearing on the electronic items sought in Plaintiffs' original or supplemental requests, namely, social media, email, and text message communications between Defendants and all dancers during the relevant me period. As our prior document produc7on makes clear, Mr. Mathioudakis, in particular, has exchanged myriad text message and social media messages with dancers.

> I would be remiss if I did not also mention that notwithstanding your efforts, Judge Shah's Order was very clear that Defendants are to convey the following on or before August 29, 2024:
>
> Defendants shall include any known contact information, including address, email address, mobile phone number, and social media handles for the potential opt–ins. Defendants shall produce the information by 8/29/24 (see attached Order).
>
> Thank you for your continued attention to this matter. We look forward to receiving ALL court-ordered information on or by August 29, 2024.

*Id.* Plaintiffs' supplemental requests for production requested substantiation of the alleged flood or leak, as well as confirmation of what documents, if any, were destroyed:

> DOCUMENT REQUEST NO. 8: Produce documents sufficient to depict when any flood occurred at Defendant High Heels' premises, the extent of the damage, and any documents destroyed as a result of the same.

Ex. 14. On August 29, Defendants produced three undated photos that were non-responsive to Plaintiffs' discovery requests, of what appear to be piles of paper, none of which demonstrate an obvious leak or water damage. Ex. 13. The photos were non-responsive to Plaintiffs' Requests as they did not address when any alleged leak occurred, the extent of any damage, or depict what documents might have been destroyed. In addition, they produced roughly 20 members' of the collective's names.

Due to these deficiencies, Plaintiffs requested yet another meet-and-confer. The call was held on September 3, 2024. During the call, Plaintiffs raised concerns about the lack of evidence supporting the leak and Defendants' failure to produce the contact information from social media and email accounts operated by Defendants. In response to Plaintiffs' request that Defendants provide the collective members' emails and social media usernames, Defendants asserted, "they don't have it," because they purportedly routinely destroy all text messages, emails, and social media messages with applicants and dancers who they employ. Assuming *arguendo* that Defendants did destroy these communications, Defendants violated Rule 37(e) and their ongoing evidence preservation obligations.

**III.    Legal Standard**

The Supreme Court has long recognized that "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), citing *Anderson v. Dunn,* 6 Wheat. 204, 19 U. S. 227 (1821); *See also Ex parte Robinson,* 19 Wall. 505, 86 U. S. 510 (1874). These powers are "governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Link v. Wabash R. Co.,* 370 U. S. 626, 630-631 (1962)." *Id.* In addition to the inherent authority discussed in *Nasco,* this Court has wide discretion to manage this collective action, to compel compliance with its Order, and to impose other remedial measures. *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010 citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (U.S. 1994) ("Courts traditionally have broad authority through means other than contempt—such as by striking pleadings, assessing costs, excluding evidence, and entering default judgment—to penalize a party's failure to comply with the rules of conduct governing the litigation process.").

In addition, FRCP 37(a)(3)(B) provides a separate basis for compelling compliance and states in relevant part:

> **(B)** *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
> 
> []
> 
> **(iii)** a party fails to answer an interrogatory submitted under Rule 33; or
> 
> **(iv)** a party fails to produce documents or fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B). Next, FRCP 37(b)(2) provides distinct statutory remedies for failure to comply with this Court's discovery order, including rendering a default judgement against the

disobedient party. *Id* at 37(b)(2)(v). Finally, FRCP 37(e) enumerates specific remedies that this Court may order for the spoilation of evidence alleged herein:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> **(A)** presume that the lost information was unfavorable to the party;
>>>
>>> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

## IV. Argument

Defendants' willful obstruction of this Court's order prevents the collective members from receiving notice and prejudices their ability to join the collective action.

### a. The Record Demonstrates that Defendants Possess the Materials Ordered Produced by this Court

Contrary to Defendants' representations, Plaintiffs' discovery responses, employee affidavits, and publicly available information that demonstrate that Defendants possess or possessed the ordered electronic communications with collective members. This Motion is supported by sworn statements that confirm that Defendants regularly use(d) electronic communications to maintain contact with both current and former employees.

Ex. 3 depicts Screenshots of Defendants' Instagram account, encouraging applicants to apply by direct messaging "@highheelssaloon." Defendants posted variations of this message both before and after the onset of this litigation, with posts made on February 29, March 12, April 18, May 16,

May 29, June 11, and as recently as September 4, 2024. This confirms that Defendants continue to solicit applications through Instagram, both before the onset of litigation and to this day.

Exs. 4-5 include sworn declarations from former employees T.G.P. and M.K., along with text message conversations between them and Mathioudakis. These messages contradict Defendants' claims that they erased former employees' contact information. In both instances, Mathioudakis initiated contact months after their employment ended, inviting them back to work. If their contact information had been deleted, Mathioudakis could not have contacted them. Exs. 4-5 also contain screenshots of Instagram direct messages exchanged with Mathioudakis. These messages remain accessible to the declarants, confirm that Defendants used Instagram to communicate with employees, and that those communications still exist and are accessible. This further demonstrates that Defendants maintained electronic records and continued to use these communication methods.

Ex. 6 contains screenshots of Instagram direct messages between opt-in plaintiff V.B. and Mathioudakis regarding employment and pay deductions. This confirms Defendants' continued use of Instagram for employment-related matters, and refutes claims that they lack access to such communications. Ex. 7 contains screenshots of the Facebook group "Dino Heels," which Defendants required dancers to join and maintained to manage employee schedules. This group confirms Defendants' active management of employee information and scheduling through social media. Exs. 8 and 21 contain declarations and screenshots of text messages where Defendants ordered dancers to join the "Dino Heels" group, and a screenshot of a post about shift changes using their legal names. These messages and the accompanying screenshots confirm Defendants' active management of employee communications and schedules through this group, and possession of electronic records of their employees' legal names and communications. The existence of this group, controlled by Defendants, directly contradicts the claim that they lack former employees' contact information.

Ex. 9 depicts screenshots of Defendants public Facebook group, "High Heels Saloon," as promoted on Defendants' website captured on September 2, 2024. After the parties' 37.2 call on September 3, wherein Plaintiffs pointed out to Defendants that this group was one source of the information ordered provided by this Court, this group was deleted or hidden from public view, as demonstrated by the screenshot captured on September 18, 2024. Ex. 9, p. Nevarez000059.

Exs. 4 and 10 are sworn declarations from multiple former dancers who also worked as servers. When working as servers, these dancers received paychecks under their legal names, confirming that Defendants, at a minimum, possessed their names and contact information. Ex. 11 is a sworn declaration from named plaintiff H.D., authenticating text messages exchanged with Mathioudakis. The declaration also authenticates accompanying screenshots of Google reviews from approximately February or March 2023, where Mathioudakis used her stage name in response to her post that used her legal name. This further confirms that Defendants knew her legal name as of February or March 2023, directly contradicting the claim that they cannot identify former employees.

    **b. This Court Should Exercise its Inherent Authority, its Authority under 216(b), Compel Production under FRCP 37(a)(3)(B), and Award Sanctions under FRCP 37(e)**

This Court should order Defendants' compliance with its prior ruling. The FLSA is a "remedial statute" that must be interpreted broadly to protect workers' rights. See *Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999). District courts have wide latitude in managing collective actions under the FLSA. See *Alvarez*, 605 F.3d at 449 (citing *Hoffmann–La Roche*, 493 U.S. at 171). Defendants' limited production thus far indicates that they are withholding critical documents, ESI, and information that this Court already ordered produced. Given Defendants' failure to provide the required information, despite repeated opportunities and directives from this Court, stronger measures are necessary to compel compliance and ensure the collective members can be properly notified.

Based on prior document productions, Plaintiffs estimate that there are more than 250 potential collective members, yet Defendants have provided incomplete contact information for only twelve additional opt-ins. Ex. 1. Accordingly, this Court should exercise its broad authority to manage collective actions, and its own inherent authority, to ensure Defendants' compliance with its order. *Alvarez*, 605 F.3d at 449; *See Stransky*, 929 F. Supp. 2d at 1113 (citing *Bagwell*, 512 U.S. at 833).

Further, this Court should compel the production of the names and contact information of the members of the collective, based on Defendants' failure to comply with Plaintiffs identical request of this Court's order contained in Interrogatory and Request Nos. 5 pursuant to FRCP 37(a)(3)(B). Plaintiffs complied with Local Rule 37.2 and FRCP 37(a)(1) on August 6, August 12, August 14, August 20, and August 23, and conducted Local Rule 37.2 meet-and-confer calls on August 8 and September 3. See Exs. 12-13; 15; 19. Defendants have been in possession of these requests since June, months well before the August 8, 2024, Order, and have still yet to comply.

This Court should enter default judgement under FRCP 37(e) if forensic imaging or information obtained from their phone carriers, email providers, Facebook and/or Instagram determines that Defendants, as they claim, continued their alleged practice of destroying electronic contact information and communications with employees after being informed of the lawsuit on April 4, 2024. Dkt. # 6. In addition, this Court should order the forensic imaging of all devices used by Defendants and for them to bear such costs. Alternatively, if it is determined that it is impossible to recover this information then this Court should order Defendants to bear the costs of a social media campaigns necessary to notify the collective of their rights to participate in this matter.

**V.     This Court should Stay the Notice Period and Toll the Statutes of Limitations for Collective Members**

This Court should also toll the statute of limitations and stay the opt-in period until resolution Defendants' violation of the Order is rectified.

12

### a. Equitable Tolling is Warranted

To assess whether equitable tolling is appropriate in this situation, courts examine: (1) whether the extraordinary circumstances were beyond the plaintiff's or putative collective members' control; (2) whether refusal to toll the statute of limitations would result in hardship for putative collective members; and (3) whether tolling prejudices the defendant. *O'Neil v. Bloomin' Brands Inc.*, 707 F. Supp. 3d 768, 781 (N.D. Ill. 2023) (citing *Hunter v. WirelessPCS Chicago LLC*, 2022 WL 864533, at 12 (N.D. Ill. Mar. 23, 2022)). Courts equitably toll statutes of limitations in FLSA actions when it is in the interest of justice. *See, e.g. Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 760–61 (9th Cir.1981) (equitable tolling proper where plaintiffs were without fault and "practical effect of not tolling the statute would be to bar forever any claim" the employees had against defendant), *abrogated on other grounds by Hoffmann–LaRoche Inc.*, 493 U.S. 165; *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475 at 8 (N.D.Cal. Mar. 6, 2007) (equitably tolling FLSA statute of limitations because of factors outside plaintiffs' control).

Plaintiffs ask this Court to equitably toll the statute of limitations until Defendants fully comply with the Order. Defendants have taken deliberate steps to prevent collective members from receiving notice. As explained above, Defendants have repeatedly failed to produce ESI necessary to identify and contact potential opt-in plaintiffs. Despite this Court's clear orders and Plaintiffs' numerous meet-and-confer efforts, Defendants produced insufficient documents and failed to supply information about current employees altogether. Given these extenuating circumstances, tolling the statute of limitations is not only appropriate but essential to prevent prejudice to putative class members.

### b. Staying the Notice Period is Warranted

This Court should also stay the notice and opt-in period indefinitely until the outstanding issues with notice are resolved. Defendants' excuses for non-compliance are unsubstantiated. The only evidence provided to support their claim of a leak is an email containing photographs of piles of paper,

which does not explain the missing ESI. Ex. 13, pp. 30-38. Proceeding with the notice period, while Defendants withhold contact information, would be unjust, as it prevents the full and fair participation of all potential collective members. Staying the notice period until Defendants comply with the Order is necessary to ensure that all potential plaintiffs are given a fair opportunity to join the collective action, and that Defendants do not benefit from their obstructive behavior. Plaintiffs therefore request that this Court stay the notice period and toll the statute of limitations until such time as Defendants produce the required ESI and fully comply with the Order.

**VI.  Conclusion**

Defendants violated this Court's Order. Despite Plaintiffs' extraordinary efforts, Defendants continue to refuse to comply with the Order and Plaintiff's identical discovery requests for the names and contact information of the members of the collective.

Wherefore, the Plaintiffs respectfully request that the Court enter an order:

1. Granting default judgment against Defendants pursuant to Rule 37(e)(2) for the willful destruction of electronically stored information (ESI) and spoliation of critical evidence related to the identification and contact information of collective members;
2. To compel Defendants to comply with this Court's Order within seven days;
3. Ordering Defendants to produce for imaging, within seven days, all devices used by Defendants to communicate with dancers, including but not limited to:
    a. Any tablets used to post dancers' information or photos on social media; and
    b. Mathioudakis' personal cell phone, which was used to communicate with dancers;
4. Requiring Defendants to bear the cost of forensic imaging;
5. Compelling Defendants to provide Plaintiffs with all usernames, email addresses, passwords, and any other information required to access:

a. Email accounts: <highheelsdancing@gmail.com>, <hhdinc50@gmail.com>, and <admin@highheelsgentlemensclub.com>;

b. Facebook accounts and groups: <https://www.facebook.com/HighHeelsSaloon/> and <https://www.facebook.com/profile.php?idti100089812308224> (Dino Heels); and

c. Instagram account: "High Heels Gentlemen's Club" (@highheelssaloon);

6. Compelling Defendants to provide Plaintiffs with the necessary information to retrieve records of emails, chatbot messages, and direct messages sent through their website by current and former dancers;

7. Requiring Defendants to post the Opt-In Notice and form in the dressing room of High Heels;

8. Compelling Defendants to produce any independent contractor agreements and/or class waivers proffered to members of the collective after the inception of this litigation;

9. Requiring Defendants to bear the costs of a social media campaign to notify collective members of their rights under this lawsuit, if forensic imaging or other investigation reveals spoliation or destruction of necessary records;

10. Staying the notice and opt-in period until Defendants fully comply with this Court's Order;

11. Tolling the statute of limitations for potential collective members until Defendants comply with this Court's Order;

12. Awarding Plaintiffs attorneys' fees and costs associated with the preparation and filing of this Motion; and

13. Granting any other relief this Court deems necessary and proper.

**Dated**: September 19, 2024

Respectfully submitted,

/s/     *Max Barack*
One of the Plaintiffs' Attorneys

CERTIFICATE OF SERVICE

I, Max Barack, hereby certify that on September 19, 2024, the foregoing was filed electronically. Notice of this filing will be sent to the following individuals by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

|  |  |
|---|---|
| The Garfinkel Group, LLC<br>(Lead Attorney) Max Barack<br>max@garfinkelgroup.com<br>701 N. Milwaukee Avenue, The CIVITAS<br>Chicago, IL 60642<br>(312) 736-7991 | _/s/_  _Max Barack_<br>One of the Plaintiffs' Attorneys |

**Service List**
Wayne B. Giampietro, LLC
840 Audobon Way
Unit 116
Lincolnshire, Illinois, 60069
Wayne B. Giampietro
wgiampietro@giampietrolaw.com