IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GISELLE NEVAREZ, et al., ) | |
| ) | No. 1:24-cv-2447 |
| Plaintiffs, ) | |
| ) | Hon. Judge Manish S. Shah |
| v. ) | |
| ) | Hon. Mag. Judge Jeffrey T. Gilbert |
| HIGH HEELS DANCING CO., et al., ) | |
| ) | Jury Trial Demanded |
| Defendants. ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTIONS TO ENFORCE THIS COURT'S ORDER, TO COMPEL DISCOVERY, FOR DISCOVERY SANCTIONS, TO STAY THE NOTICE AND OPT-IN PERIOD, AND TO EQUITABLY TOLL THE STATUTE OF LIMITATIONS, AND IN SUPPORT OF PLAINTIFFS' MOTION FOR CIVIL CONTEMPT**

**Dated**: October 29, 2024                    /s/      *Max Barack*
                                                One of the Plaintiffs' Attorneys

The Garfinkel Group, LLC
(Lead Attorney) Max Barack
max@garfinkelgroup.com
701 N. Milwaukee Avenue, The CIVITAS
Chicago, IL 60642
(312) 736-7991

# Exhibit 1

I.  **Introduction**

This Court should grant Plaintiffs' Motions to Enforce the Court's Order, to Compel Discovery, for Discovery Sanctions, to Stay the Notice and Opt-In Period, to Equitably Toll the Statute of Limitations ("Motion to Enforce"), and b) for Civil Contempt.

Defendants have now violated three consecutive court orders and knowingly made misrepresentations to the Court. Worse, and most prejudicial to Plaintiffs, forensic analysis has now conclusively proven that Defendants intentionally spoliated massive amounts of evidence, in violation of FRCP 37(e), between September 24 and October 8, 2024. Not only did the emails Defendants spoliated contain the names and contact information of the members of the FLSA collective repeatedly ordered to be produced by this Court, it also likely contained evidence necessary for Plaintiff's to prove the allegations contained in their Complaint. Aggravating the permanent deletion of thousands of emails is that forensic analysis has also proven that it occurred immediately following this Court's explicit orders of September 24 and October 8, 2024. The timing of Defendants' email destruction further demonstrates the contempt in which they hold for this Court and its orders. Default judgment and monetary sanctions are warranted due to Defendants' willful obstruction of discovery, spoliation, and interference with the 216(b) opt-in/notice process.

Furthermore, Defendant Konstantinos Mathioudakis's sworn declaration contained deliberate misrepresentations. Plaintiffs respectfully request that the Court grant their motions, impose the appropriate sanctions, hold Defendants in contempt, and grant default judgment.

II.  **Background**

Plaintiffs incorporate by reference the "Background" sections from their Motion to Enforce (filed September 19, 2024), the Motion for Contempt, and the October 10 Interim Status Report, which detail Defendants' ongoing violations of this Court's orders, including the October 8, 2024 Order. ECF Nos. 34, 40, and 47.

### a. Forensic Findings Regarding Email and Social Media Accounts Revealed Defendants Spoliated Evidence and Failed to Disclose All Accounts:

Forensic analysis performed by Crowe LLP's imaging of the devices, email, and social media accounts provided by Defendants has revealed Defendants' extensive spoliation of evidence and failure to disclose numerous email and social media accounts, in contravention of this Court's orders. ECF Nos. 39, 46.

#### i. Defendants Violated this Court's Order When They Deleted over 8,000 emails between September 24 and 27, 2024

Defendants deleted thousands of emails after the Court ordered them produced, in violation of that order. Crowe's forensic analysis of one of the email accounts identified by Plaintiffs, admin@highheelsgentlemensclub.com, determined that 8,030 emails had been deleted from this account. 7,070 of these emails were deleted between September 24-27, *after* Defendants were ordered to preserve and produce them. Ex. 1 at ¶¶ 23, 25[1]; ECF No. 39. The complete contents of the destroyed emails could not be recovered since Defendants had first deleted the emails and then emptied the "deleted items" folder.

However, Crowe's analysis of the metadata and the information that was originally contained in the subject line of the deleted emails (which they were able to observe) confirmed that 2,343 of the emails originated from or were related to webform submissions from employment applicants during the period covered by the Court's August 8 Order. *Id.* at ¶ 26. Defendants continued deleting emails *after* the October 8 hearing, further exacerbating the earlier spoliation. ECF No. 47, pp. 2-4. Based on the webform for employment that is still extent on Defendants' website, the emails that were deleted contained contact information of applicants during the FLSA opt-in period covered by the August 8 Order.

---

[1] Defendants' deletion activity continued well beyond September 27, 2024, compounding the spoliation *Id.* at ¶¶ 24-25.

2

Rule 37(e) is intended to address loss of relevant ESI that was required to be preserved but was not preserved because reasonable steps were not taken, resulting in prejudice to the opposing party. *See DR Distributors v. 21 Century Smoking*, 513 F. Supp. 3d 839, 956 (N.D. Ill. 2021). Rule 37(e) has five threshold requirements:[1] (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery. *See Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022) (citing Fed. R. Civ. P. 37(e)); *DR Distributors*, 513 F. Supp. 3d at 958. If all these threshold requirements are met, the court must then determine if the party seeking the ESI has suffered prejudice or if the party with possession, custody, or control of the ESI intended to deprive the seeking party of the ESI. *See* Fed. R. Civ. P. 37(e)(1), (2). If prejudice but not intent exists, then the court may impose curative measures, including but not limited to, an instruction that jurors may consider the circumstances surrounding the loss of the ESI. *See DR Distributors*, 513 F. Supp. 3d at 958. If intent exists, the court can impose sanctions, including presuming that the information was unfavorable, instructing the jury to presume the information was unfavorable, or entering dismissal or default. *See Hollis*, 603 F. Supp. 3d at 617-618 (citing Fed. R. Civ. P. 37(e)(2)).

Here, based on Crowe's conclusions it is reasonable to infer based on their subject line that the data contained in the destroyed emails included the full name, phone number, email address, and approximate hire date of potential collective opt-in members. Therefore, since this ESI was: A) destroyed during ongoing litigation between the parties; B) ordered produced, should have been preserved; and C) was intentionally destroyed, and cannot be restored, this Court should grant Rule 37(e) sanctions and enter a default judgment.

3

Additionally, forensic analysis of Defendants' Facebook account also revealed the deletion of Facebook friends on October 1, 2024. *Id.* at ¶ 27. The foregoing evidence all directly contradicts Mathioudakis's sworn statement (ECF No. 45-1, pp. 1-2), in which he claimed that all documents related to the dancers had been produced and that all earlier records were destroyed in a flood and were unavailable.

### ii. Defendants Failed to Disclose all Email and Social Media Accounts In Violation of this Court's Order

Defendants intentionally failed to disclose all email and social media accounts to Plaintiffs in violation of this Court's October 8, 2024 Order. This Court ordered Defendants by 5:00 p.m. on October 8, to disclose to Plaintiffs' Counsel "every email address used by defendants, including Defendant Mathioudakis, for the period of the last three years, including any information necessary to login to those accounts, such as answers to security questions or the means to comply with two-factor authentication." ECF No. 46, p. 1.

On October 8, Defendants stated that they had two email addresses and three social media accounts (one remaining Facebook account, one Instagram account, and one Snapchat account). However, forensic analysis revealed ***seven*** undisclosed email accounts: 1) dinohighheels@gmail.com; 2) cobradino46@gmail.com; 3) hhdcoinc@gmail.com; 4) alexpcworks77@gmail.com; 5) mysonybravia812@gmail.com; 6) Slsamg585@gmail.com; and 7) highheelssaloon@icloud.com. Ex. 1 at ¶ 20. In addition, a second Instagram account, @mathioudokostas, was discovered alongside the previously disclosed @highheelssaloon account. *Id.* at ¶ 21.

### iii. Defendants Provided a Phone that was Missing its SIM Card

This Court ordered Defendants to turn over Defendants' devices to Plaintiffs' Counsel after the October 8 hearing. ECF No. 46, p. 1. However, upon inspection of the Samsung Galaxy S23 device, its SIM card had been removed. As noted in the Interim Status Report filed on October 10 SIM cards often contain contact information. Ex. 1 at ¶ 17; ECF No. 47.

4

III.    Argument

Plaintiffs' motions to enforce and for contempt should be granted because Defendants have engaged in a pattern of deliberate noncompliance with this Court's orders. Defendants destroyed crucial evidence, missed deadlines, made false representations, and concealed email and social media accounts. These actions violate the Court's orders and meet the standards for sanctions under Rule 37(e) and contempt, warranting default judgment and monetary sanctions. In addition, after the October 8 hearing, Defendants missed the deadline to produce and deleted an additional 2,700 emails overnight between October 9-10, 2024 (in addition to the 7,070 that they had previously destroyed between September 24-27,2024. ECF No. 47, pp. 2-4; Ex. 1, ¶¶ 23-25;

Under FRCP 37(e) and this Circuit's civil contempt standards, Defendants' pattern of bad faith, spoliation, and deliberate noncompliance warrants the most severe sanctions. The Seventh Circuit has upheld default judgment under FRCP 37(e) where defendants repeatedly violated discovery orders, destroyed evidence, and obstructed the discovery process, with lesser sanctions proving ineffective. *See Domanus v. Lewicki*, 742 F.3d 290, 292-93, 296-97 (7th Cir. 2014): *United States v. Bryan*, 339 U.S. 323, 330-32 (1950); *U.S. v. Seetapun*, 750 F.2d 601, 605 (7th Cir. 1984).

IV.    Conclusion

Wherefore, the Plaintiffs respectfully request that the Court enter an order granting the relief sought in Plaintiffs' Motions to Enforce the Court's Order, to Compel Discovery, for Discovery Sanctions, to Stay the Notice and Opt-In Period, to Equitably Toll the Statute of Limitations ("Motion to Enforce"), and b) for Civil Contempt.

**Dated**: October 29, 2024　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　/s/    *Max Barack*
　　　　　　　　　　　　　　　　　　　　　　　　One of the Plaintiffs' Attorneys

5

CERTIFICATE OF SERVICE

   I, Max Barack, hereby certify that on October 29, 2024, the foregoing was filed electronically. Notice of this filing will be sent to the following individuals by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| | */s/  Max Barack* |
| The Garfinkel Group, LLC | One of the Plaintiffs' Attorneys |
| (Lead Attorney) Max Barack | |
| max@garfinkelgroup.com | |
| 701 N. Milwaukee Avenue, The CIVITAS | |
| Chicago, IL 60642 | |
| (312) 736-7991 | |

**Service List**
Wayne B. Giampietro, LLC
840 Audobon Way
Unit 116
Lincolnshire, Illinois, 60069
Wayne B. Giampietro
wgiampietro@giampietrolaw.com

Stephen G. Daday
c/o Klein Daday Aretos & O'Donoghue
1051 Perimeter Drive
Suite 300
Schaumburg
Schaumburg, IL 60173
sdaday@kdaolaw.com

## DECLARATION OF CONNOR NOVAK

Declaration of **CONNOR NOVAK**, pursuant to 28 U.S.C. § 1746, under the penalty of perjury:

1. I am over the age of eighteen, suffer no legal disabilities, have personal knowledge of the facts set forth below, and am competent to testify.

2. I understand I am making the statements in this Declaration under oath. This Declaration is true and accurate to the best of my knowledge.

3. I have been employed with Crowe LLP as a Digital Forensics Senior Consultant since 2023. In this position, my duties and responsibilities include examining all aspects of computer forensics, mobile forensics, and electronic discovery cases. I am directly involved in the forensic imaging, analysis, and production of such cases. Previous to my employment with Crowe LLP, I worked for 4Discovery as a Forensic Examiner from May of 2019 up until the company was acquired by Crowe in November of 2023. Prior to this I worked for KPMG as a Forensic Specialist from 2017-2018. During the course of my career in digital forensics, I have provided expert reports including affidavits and declarations. I have given depositions and forensic testimony regarding matters involving ESI (Electronically Stored Information) and worked on hundreds of matters involving disputes over digital evidence and electronic data.

4. I received a bachelor's degree in Computer Forensics and Digital Investigations from Champlain College in 2017. I also hold an industry-standard certification relating to the collection, analysis, and production of MacOS data, the Magnet Certified MacOS Examiner (MCME).

5. On October 10th, 2024, I received two electronic devices via a courier dispatched by Crowe, LLP for purposes of retrieving the below listed devices from the offices of the Garfinkel Group, LLC.

6. The first device was a Samsung Galaxy S23 (S918U1) cellular phone bearing serial number R5CW82MVV6L.

7. The second device was an Apple iPad A2696 bearing serial number JTP674G9YV.

8. Counsel requested that Crowe LLP create a forensic preservation of both devices.

9. I took an Advanced Logical extraction of both devices using Cellebrite v7.69.1.1557 These forensic preservations were completed on October 10th, 2024.

10. Cellebrite is an industry standard tool used for extracting data from mobile devices relied upon by both law enforcement and private sector digital forensic professionals.

# Exhibit 1 (To Reply)

1

11. An Advanced Logical extraction captures the entire content of the user data stored on the device at the time of preservation. All subsequent analysis is performed on this preservation copy.

12. The resulting SHA256 hash value for the Samsung Galaxy S23 was FF1C65530A57ED8FC560266B4F28C1D99A37F48D4E272ADCEC4726C325B8334B.

13. The resulting SHA256 hash value for the Apple iPad was B9F8616316232A24BC2074A65B62497D6323902352C6208F7F80945214341E1D.

14. Counsel provided me with three email addresses along with two passwords. Counsel stated that they were unaware as to which password pertained to which email address.

15. The email addresses that were provided were:

a. admin@highheelsgentlemensclub.com;
b. hhdinc50@gmail.com;
c. highheelsdancing@gmail.com

16. I was also provided with the following social media usernames, with their corresponding social media platform listed in parenthesis:

a. @highheelssaloon (Instagram);
b. "High Heels Saloon" (Facebook);
c. "Dino Heels" (Facebook); and
d. "Highheelssaloon" (Snapchat).

17. Upon inspection of the Samsung Galaxy S23, I observed that it lacked a subscriber identity module (SIM) card. A SIM card is a microcontroller-based chip used in mobile devices such as smartphones, tablets, and other mobile devices that identifies and authenticates a device to a cellular network, such as AT&T, Verizon, or T-Mobile. SIM cards can often contain other data, including contact information stored in data fields for names and phone numbers.

18. Based on my forensic analysis of the email and social media accounts, a second phone exists which was recently added as a known device to the email accounts hhdinc50@gmail.com and highheelsdancing@gmail.com. This device is a Samsung Galaxy S24 (S928U1) bearing serial number R5CX90Q3X8H. It was added as a device to the email account hhdinc50@gmail.com on October 7th, 2024; I noted that this device was signed into the account at the time of collection.

19. I subsequently forensically examined the two devices in my possession, the email accounts provided, and the social media accounts provided to determine whether there had been, or were other, email accounts, social media accounts, or devices which may contain the contact information of former dancers.

20. The examination and analysis performed in Para. 19 above of the accounts that I was able to access revealed seven additional email accounts that were not provided to me by counsel:

    a. dinohighheels@gmail.com;
    b. cobradino46@gmail.com;
    c. hhdcoinc@gmail.com;
    d. alexpcworks77@gmail.com;
    e. mysonybravia812@gmail.com
    f. Slsamg585@gmail.com
    g. highheelssaloon@icloud.com

21. Additionally, I uncovered a second Instagram account, @mathioudokostas, in addition to the @highheelssaloon Instagram account identified above.

22. I subsequently forensically examined the email address provided by counsel, admin@highheelsgentlemensclub.com. Based on my analysis, this email account was used to receive the webforms depicted below in Exhibit A and submitted via https://highheelsgentlemensclub.com/work-opportunities.

23. My analysis revealed that approximately 8,030 emails had been deleted from this account. Approximately 7,070 of these emails were deleted between September 24th-27th, 2024. Deletion activity continued after September 27th.

24. Of the 8,030 deleted emails, I identified a date received for 411. The earliest was from November 3rd, 2022, and the most recent was from March 19th, 2024.

25. Although I was unable to recover the contents of the emails referenced in Para. 23, I determined from metadata that the subject of 730 of these emails was "New contact form message for HighHeels Gentlemen's Club via Unnamed Contact Widget". Additionally, I determined that the subject of 1,624 of the deleted emails read "A message from your HighHeels Gentlemen's Club contact form".

26. A total of 2,343 of the deleted emails originated from or related to the webform used for contacting admin@highheelsgentlemensclub.com.

3

27. Regarding the Facebook account provided by counsel, I identified that the account owner had deleted two "Friends" from the account in the month of October 2024.

28. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this day of October 2024:

Connor Novak             Dated: 10/23/2024

# Exhibit A



*Figure 1*



*Figure 2*