UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GISELLE NEVAREZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HIGH HEELS DANCING CO. and KONSTANTINOS MATHIOUDAKIS,<br><br>Defendants. | No. 24 CV 2447<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Defendant High Heels Dancing Co. is an adult entertainment bar. Plaintiffs formerly worked at High Heels as exotic dancers. In March 2024, plaintiffs sued High Heels and its manager, defendant Konstantinos Mathioudakis, for unlawful wage-and-hours practices under the Fair Labor Standards Act, Illinois Minimum Wage Law, and Illinois Wage Payment and Collection Act. In the subsequent months, defendants violated court orders and their discovery obligations, leading me to grant plaintiffs' motion for entry of default as a sanction for civil contempt. High Heels filed for bankruptcy protection, automatically staying this case. After the stay was lifted a year later, plaintiffs filed three motions. The first seeks leave to file a Second Amended Complaint, naming Dimitrios Kalaitzakis, the owner of High Heels, as a defendant in his individual capacity. The second asks to open civil contempt proceedings against Kalaitzakis. Finally, plaintiffs move for class certification. Kalaitzakis opposes all three motions, and notwithstanding the order of default, High

Heels joins in Kalaitzakis's objections. For the reasons discussed below, the motions are granted in part, denied in part.

## I. Legal Standards

Federal Rule of Civil Procedure 16(b)(4) requires a party to modify the schedule before pursuing an amendment. *Sumrall v. LeSea, Inc.*, 104 F.4th 622, 630 (7th Cir. 2024). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Once good cause is shown, a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), but may deny leave to amend in the case of "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citation omitted).

Civil contempt "is remedial, and for the benefit of the complainant," while criminal contempt "is punitive, to vindicate the authority of the court." *F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009) (citation omitted). Civil sanctions can either "*compensate* the complaint for his losses caused by the contemptuous conduct" or "*coerce* the contemnor's compliance with a court order." *Id.* (emphasis in original). "To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant …; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

Plaintiffs bear the burden of showing, by a preponderance of the evidence, that all requirements for class certification under Federal Rule of Civil Procedure 23 are met. *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 895 (7th Cir. 2024). As a threshold matter, the class must be defined clearly and based on objective criteria, and its membership must be definite or ascertainable. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015). All classes must satisfy the four Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs seeking to certify a class under Rule 23(b)(3) must also show that common questions predominate over any questions affecting only individual members, and that a class action is superior to other available methods for adjudicating the controversy. *Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 961 (7th Cir. 2026). If the class meets these requirements, "the class *must* be certified, even if it is sure to fail on the merits." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022) (emphasis in original).

## II. Background

Defendant High Heels Dancing Co. is an adult entertainment bar, which advertises that it provides "the very best in adult entertainment, including the most talented, full nude dancers and a full bar." [4] ¶ 14.[1] Plaintiffs Giselle Nevarez, McKenna Dorn, Kalina Schmidt, and Hannah Durkin worked for High Heels as exotic

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are primarily taken from the First Amended Complaint, [4].

dancers. [4] ¶¶ 5–8. Defendant Konstantinos Mathioudakis, the club's manager, directed and controlled the payment policies of the club and the rules with respect to the dancers. [4] ¶ 15.

Dancers had no ability to negotiate their own rates of pay. [4] ¶ 21. High Heels dictated the rates that dancers could charge for private dances and table dances, and deducted set percentages from payments received for such work. [4] ¶ 21. Dancers were paid exclusively through the tips received from dances. [4] ¶ 19. At times, dancers were required to share their tips with managers, bouncers, security, and agents of High Heels. [4] ¶ 24. Dancers were required to pay "house fees" to defendants, which were flat-rate payments charged for the right to dance at the club during a given shift. [4] ¶ 22. Defendants required dancers to pay house fees regardless of whether any patrons visited the bar or whether they earned any tips. [4] ¶ 23. Some plaintiffs regularly worked double shifts and thus in excess of 40 hours per week. [4] ¶ 25.

Plaintiffs filed the present lawsuit in March 2024, seeking to represent a class of individuals who currently work or previously worked as exotic dancers at High Heels. Specifically, plaintiffs brought claims under the FLSA (for failure to pay minimum wage and failure to pay overtime) and Illinois statutes (for failure to pay minimum wage, illegal deductions, and tip theft) against High Heels and Mathioudakis, who they allege was personally involved in the unlawful wage practices. [4] ¶¶ 80–105.

In May 2024, pursuant to Federal Rule of Civil Procedure 16(b), I set a discovery schedule and a deadline for the parties to amend the pleadings. [17]. The parties were to exchange initial disclosures by June 6, 2024, and any requests to amend the pleadings were to be made by November 19, 2024. [17].

In the subsequent months, defendants obstructed the litigation. Defendants did not respond to plaintiffs' motion for conditional certification of a collective action. I granted the motion and ordered defendants to produce a list of names and contact information for all exotic dancers who worked at High Heels dating back to early 2021. [28]. Defendants claimed that a water leak destroyed all their records and proceeded to produce just 20 names—providing contact information for 12 (most of whom were already named in this action)—despite prior document production suggesting that the proper number exceeded 250. [34] at 5. Defendants also claimed that they used only two email accounts, yet plaintiffs' forensic investigation revealed seven additional accounts and over 7,000 emails that were deleted after plaintiffs' motion for sanctions. [55] at 1–2.

Plaintiffs' motion for sanctions therefore argued that defendants' willful obstruction prevented the collective members from receiving notice and prejudiced their ability to join the collective action. [34] at 12. I agreed and found that default judgment was needed to protect the integrity of the court and civil litigation. [55] at 2. I entered an order of default against defendants establishing their liability for all claims in the amended complaint, [4], and barring defendants from offering any evidence to contest class certification under Rule 23. [55] at 1.

That order was entered on November 19, 2024—the same day as the deadline to amend the pleadings. [17]. Two months later, in January 2025, defendant High Heels filed for bankruptcy and moved to stay this case pending proceedings in the bankruptcy court. [86]. I granted the request and the case was stayed until August 2026, after the bankruptcy court modified its automatic stay to permit this action to proceed in its entirety. [100-1].

Plaintiffs now seek leave to file a Second Amended Complaint, naming Dimitrios Kalaitzakis, the owner of High Heels, as a defendant in his individual capacity. [102]. They move to initiate civil contempt proceedings against Kalaitzakis and for expedited discovery. [104]. Finally, they move for class certification under Rule 23 for their state-law claims. [106]. Kalaitzakis opposes all three motions. Although the default order precludes defendants High Heels and Mathioudakis from offering evidence to contest class certification, High Heels filed an objection joining Kalaitzakis's opposition to the motions. [113].

## III. Analysis

### A. Second Amended Complaint

Plaintiffs first move for leave to file a Second Amended Complaint. [102]. They do not seek to reopen resolved issues or extend the default-sanction order to Kalaitzakis but rather seek to add him as a defendant to determine his individual liability for the claims asserted against High Heels.

While courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), a schedule should be modified "only for good cause," Fed. R. Civ. P. 16(b)(4). Thus, post-deadline amendments create a "two-step process."

*Sumrall*, 104 F.4th at 630 (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)). A party seeking amendment must show "good cause for modifying the scheduling order" before reaching the Rule 15 question. *Id.* (quoting *Alioto*, 651 F.3d at 720).

On the Rule 16(b) issue, "the primary consideration for district courts is the diligence of the party seeking amendment." *Id.* (quoting *Alioto*, 651 F.3d at 720). When a party provides an "insufficiently robust explanation of why [it] was diligent," there is no good cause. *Id.* (quoting *Alioto*, 651 F.3d at 720). Here, plaintiffs contend that the "sufficiently robust explanation" for their late request to amend is defendants' discovery misconduct. [102] at 8. Specifically, plaintiffs argue that they were unaware of Kalaitzakis's alleged individual and equitable liability until the bankruptcy proceedings revealed his level of involvement in the compensation practices at High Heels. [102] at 7.

But their failure to ascertain Kalaitzakis's individual liability is not actually tied to defendants' documented misconduct in this case. Indeed, plaintiffs' 2024 request for sanctions arose from defendants' failure to adequately identify potential *plaintiffs* in this case, not their failure to identify potential defendants. As plaintiffs acknowledge, defendants' August 2024 supplemental answers to plaintiffs' interrogatories identified Kalaitzakis as the "sole owner, officer and director of High Heels." [102-1] at 61. Defendants' answers also identified Kalaitzakis as having assisted in preparing the supplemental responses and Kalaitzakis signed a

verification under the penalty of perjury stating that he was the owner of High Heels and had knowledge of the answers to the interrogatories. [102-1] at 61, 67.

True, just being the owner of a company does not make someone liable for FLSA violations. *See Villareal v. El Chile, Inc.*, 776 F.Supp.2d 778, 785 (N.D. Ill. 2011) (noting that a determination of whether an individual is liable under the FLSA depends on whether the individual had control over the alleged FLSA violation); *Perez v. Super Maid, LLC*, 55 F.Supp.3d 1065, 1075 (N.D. Ill. 2014) (describing the "economic reality" test for determining whether an individual is an employer under the FLSA). But nothing prevented plaintiffs from inquiring further about Kalaitzakis's duties as the owner of High Heels.

Nor have plaintiffs pointed to evidence suggesting that Kalaitzakis misrepresented his duties as owner of the company. Plaintiffs claim that defendants "did not develop or produce the operational and financial information necessary to assess the extent of his involvement in the compensation practices at issue or the factual basis for potential individual-employer and equitable liability," but it was not defendants' job to do so. Defendants' "discovery misconduct and spoliation" did not implicate the extent of Kalaitzakis's involvement in the contested wage practices.[2] Because plaintiffs had sufficient opportunity to become aware of facts pertaining to Kalaitzakis's individual liability before the deadline to amend the pleadings had

[2] Though plaintiffs cite to Kalaitzakis's sworn testimony at the February 2025 meeting of creditors in the bankruptcy case, they do not explain why facts concerning Kalaitzakis's involvement in the company's compensation practices could not have been developed before the deadline to amend the pleadings. For example, plaintiffs asked for the job duties of the company's owner in Interrogatory No. 8 and they do not now point to anything in the answer that misled them or deterred them from learning Kalaitzakis's role.

passed, they have not established good cause. *See Trustmark Ins. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). I therefore need not reach the Rule 15 question. Plaintiffs' motion for leave to file a Second Amended Complaint, [102], is denied.[3]

**B. Civil Contempt**

But just because Kalaitzakis is not a defendant to this action does not mean he cannot be held in civil contempt. *See, e.g.*, *In re Res. Tech. Corp.*, 2008 WL 5411771, at *3 (N.D. Ill. Dec. 23, 2008) ("[A] corporate official may be held in contempt if he prevents a corporation … that is subject to a court order from complying with the order, causes it not to comply, or fails to take appropriate action to cause it to comply."); *see also Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 856 (7th Cir. 2005) ("[I]t is well established that an individual officially responsible for a corporation's compliance with a court order … may be punished for contempt if he fails to act appropriately."). Here, plaintiffs argue that Kalaitzakis "exercised substantial authority over [High Heels'] affairs, had actual or constructive notice of the Court's orders, and failed to exercise reasonable diligence." [104] at 2–3.

Kalaitzakis mischaracterizes the relief requested. Plaintiffs are not attempting to bind "a nonparty through contempt with a prior jurisdictional and due-process showing." [109] at 14. To the contrary, plaintiffs explicitly seek an evidentiary hearing to address Kalaitzakis's "notice, official responsibility, practical authority,

[3] The November 2024 order of default against High Heels and Mathioudakis is therefore undisturbed and remains in place.

and reasonable diligence." [104] at 15. Only "[u]pon completion of that process" do plaintiffs ask to have Kalaitzakis held individually in civil contempt. [104] at 15.

At this juncture, I find that plaintiffs have produced enough evidence to warrant such a hearing. I have already found that defendants violated court orders and their discovery obligations under Rule 37. [55] at 2. During the enforcement proceedings, Kalaitzakis swore that he was "involved in responding to the discovery served upon High Heels," maintained the company's records, and provided plaintiffs with all the information he had regarding the names of women who danced at the club during the relevant time period. [104-1] at 89–90. The bankruptcy record tells a similar tale. *See, e.g.*, [104-1] at 16. The existing record warrants individualized proceedings to determine whether Kalaitzakis had notice of the Court's orders, responsibility for compliance, and the practical authority to cause compliance.

### C. Class Action Certification

Plaintiffs propose certifying the following class: "All individuals who worked as exotic dancers at High Heels Gentlemen's Club, f/k/a High Heels Saloon & Gentlemen's Club, in Illinois at any time from March 25, 2021, through the present." [106] at 1.

Though defendants were barred from offering any evidence to contest class certification, the burden remains on plaintiffs to show, by a preponderance of the evidence, that all requirements for class certification have been met. *See Jacks*, 118 F.4th at 895; *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (noting that a default does not itself certify a class and requiring that a district court conduct its own "rigorous analysis" under Rule 23).

*1. Ascertainability*

Classes must "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. The inquiry focuses on the adequacy of the class definition itself, and not whether it would be difficult to identify particular members of the class. *Id.* Class definitions "generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660.

Here, the proposed class is ascertainable. Membership turns on the objective criteria of whether an individual worked as an exotic dancer at High Heels in Illinois during the class period. It identifies a particular group of individuals harmed during a particular time period in a specific location.

*2. Numerosity*

To maintain a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict numerosity threshold, a class of over 40 members raises a presumption of impracticability. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."). Here, the putative classes number is no less than 63. [106] at 10. The numerosity requirement is met.

*3. Commonality*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). What

matters is not the raising of common questions, but rather the ability to generate common answers. *Id.* at 350.

Here, class-wide adjudication is likely to generate common answers to the question of whether dancers were properly classified as independent contractors, whether defendants paid any hourly wages, and whether the fees and fines paid by dancers violated Illinois statutes. Plaintiffs have alleged a common compensation model. Because their claims rise or fall on the legality of that model, commonality is satisfied.

*4. Typicality and Adequacy*

For the final two Rule 23(a) requirements, plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The requirements of typicality and adequacy tend to merge into one and tend to overlap heavily with the commonality requirement. *Dukes*, 564 U.S. at 349 n.5.

Typicality and adequacy are satisfied here. The named plaintiffs are each former exotic dancers at High Heels who allege that they were wrongly classified as independent contractors, were not paid a minimum wage, and were unlawfully subjected to pay deductions and tip theft. All participants advance the same theories and seek relief under the same Illinois wage statutes. There are no concerns about competency of class counsel or "conflicts of interest between named parties and the class they seek to represent" that undermine the adequacy of the putative class

representatives or their counsel. *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 714–15 (7th Cir. 2015). All Rule 23(a) requirements are satisfied.

*5. Predominance and Superiority*

Once an ascertainable class has been defined and all Rule 23(a) requirements have been met, plaintiffs must still satisfy one of the three Rule 23(b) categories—in this case, Rule 23(b)(3). Accordingly, plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, predominance is satisfied because common proof resolves the classification and compensation issues central to plaintiffs' claims. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012). As seen in plaintiffs' interrogatory responses and representative declarations, plaintiffs experienced the same common practices concerning their hourly wages and the fees and fines charged by defendants. *See* [106-1] at 7–22. Even more, liability has already been established, *see* [55], leaving only the individualized issues of class membership and damages administration.[4] And "[i]t is well established that the presence of

---

[4] The one-way intervention doctrine does not preclude certification in this case. "The rule against one-way intervention prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016). The rule exists because it is "unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Id.* at 1058 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)). Here, plaintiffs did not defer certification to pursue a favorable merits determination before seeking to extend that result to an uncertified class. Liability was established as a sanction for civil contempt. [55]. The order of events in this case presents the sort of "unusual"

individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815.

The other requirement of Rule 23(b)(3), superiority, requires a class action to be "the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898. There is nothing inherently impermissible about litigating state minimum-wage-law claims as a class action. *See Ervin v. OS Rest. Servs.*, 632 F.3d 971, 976–79 (7th Cir. 2011) (state-law class action can be a superior means of adjudicating minimum wage disputes); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("Simplification is desirable in law, especially in the present context, because joining a collective action and a class action or actions in one suit, as in this case, is both common and, we have held, permissible."). When there are many common issues of law and fact, "the superiority requirement likely poses no serious obstacle to class certification." *Messner*, 669 F.3d at 815 n.5. Other factors, "including the lack of awareness of a claim, inability to access an attorney, or complex, costly discovery," can all also contribute to a finding that a class action is superior to other available methods. *Svoboda*, 168 F.4th at 967.

Because the central and common questions of employment status and wage-and-hour practices predominate over any individual issues, not much else is needed to satisfy the superiority requirement. Requiring individual wage actions would be inefficient and impractical. Rule 23(b)(3) is satisfied.

---

sequence contemplated in *Bakov v. Consolidated World Travel*, 68 F.4th 1053, 1058 (7th Cir. 2023). Barring certification would reward defendants' misconduct.

To avoid repeated disputes over class membership, and, if necessary, avoid protracted damages proceedings, the class should be defined by a fixed time period and is therefore closed as of the date of this order certifying the class.

*6. Bar-Date Objection*

Because I have denied plaintiffs' motion for leave to file a Second Amended Complaint, Kalaitzakis's opposition to the motion for class certification is moot. That said, I briefly address his primary argument in opposition.

Kalaitzakis does not challenge that the proposed class is ascertainable and numerous, that the named plaintiffs' claims present common questions and are typical, that plaintiffs and counsel are adequate, or that the standardized classification and compensation practices make common issues predominant and class adjudication superior. Kalaitzakis instead argues that the certification motion is "legally irrelevant" because plaintiffs failed to file a proof of claim for a putative class before the claims bar date in the bankruptcy case. [109] at 16–20.

"A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims." *In re KMart Corp.*, 381 F.3d 709, 715 (7th Cir. 2004) (citation omitted). Because the bar date expired and plaintiffs failed to file a proof of claim on behalf of any putative class, Kalaitzakis argues, class certification should be denied on the grounds that it will not be permitted in the bankruptcy. [109] at 17–20. But the bankruptcy court already rejected this argument, finding that "in light of the substantial factual and procedural record developed" in the present case, the district court "is the

appropriate forum to adjudicate and liquidate the claims asserted therein … Those considerations apply to the claims of all named plaintiffs, opt-in plaintiffs, *and any putative class members included in the District Court Action*.” [102-1] at 207 (emphasis added).

More importantly, Kalaitzakis’s objection concerns the consequences of a judgment in this case, not whether the claims may be certified and adjudicated in the first instance. The bankruptcy court must ultimately decide whether and how to enforce any judgment deriving from this class action. But that is not a reason to deny certification at this stage of the present proceeding, where plaintiffs have satisfied the requirements of Rule 23.

The plaintiffs’ motion for class certification, [106], is granted. I certify the following class:

> All individuals who worked as exotic dancers at High Heels Gentlemen’s Club, f/k/a High Heels Saloon & Gentlemen’s Club, in Illinois at any time from March 25, 2021, through the date of class certification.

Plaintiffs Giselle Nevarez, McKenna Dorn, Kalina Schmidt, and Hannah Durkin are designated as class representatives. I appoint The Garfinkel Group, LLC as class counsel.

## IV. Conclusion

Plaintiffs’ motion for leave to file a Second Amended Complaint, [102], is denied. Plaintiffs’ motion for civil contempt and expedited discovery, [104], is granted in part. A status hearing to discuss procedures for contempt proceedings against

Kalaitzakis is set for December 2, 2026 at 9:30 a.m. Plaintiffs' motion for class certification, [106], is granted.

ENTER:

Manish S. Shah
United States District Judge

Date: November 19, 2026